THE COLSON CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3919. Promulgated November 6, 1945.

*John A. Selby, Esq.,* for the petitioner.
*Lawrence R. Bloomenthal, Esq.,* for the respondent.

**OPINION.**

VAN FOSSAN, *Judge*: The principal issue here presented is whether the respondent may invoke the provisions of section 711 (b) (1) (**J**) of the Internal Revenue Code so as to disallow a bad debt deduction as an abnormality in computing the petitioner's excess profits net income for the base period year 1936, where such action will result in an increase in excess profits tax.

The question arises in the computation of the petitioner's excess profits credit. Section 712 (a) of the code allows an excess profits credit based on income computed under section 713 or on invested capital computed under section 714, whichever results in the lesser tax. This choice is limited to domestic corporations in existence before January 1, 1940. The petitioner was in existence before that date and has computed its credit under section 713.

Section 713 (a) provides that the excess profits credit based on income shall be 95 percent of the average base period net income, with certain adjustments not here material. The petitioner's base period is the four-year period beginning January 1, 1936, and ending December 31, 1939.

The petitioner computed its average base period net income under the method provided in section 713 (f), sometimes referred to as the

"growth formula." The respondent concedes the petitioner's right so to do. That section provides that for corporations with increased earnings in the last half of the base period the average base period net income shall be determined (1) by computing the excess profits net income or the deficit in excess profits net income for each of the taxable years of the taxpayer in its base period; (2) by computing for each half of the base period the aggregate of the excess profits net income for each of the taxable years in such half, reduced by any deficits in excess profits net income; (3) if the aggregate amount ascertained for the second half of the base period is greater than that so ascertained for the first half, the difference shall be divided by 2; (4) such difference shall then be added to the aggregate amount of the excess profits net income for the second half of the base period; (5) this sum is to be divided by the number of months in the second half of the base period (here 24 months) and the result is to be multiplied by 12. The result of this computation is to be taken as the average base period net income, except that the amount so determined shall in no case exceed the highest excess profits net income for any taxable year in the base period.

The excess profits net income for each base period year is determined in accordance with section 711 (b). Section 711 (b) (1) provides that the excess profits net income for any such year shall be generally the taxpayer's normal tax net income as adjusted, but that "the following adjustments shall be made." The adjustments so provided for are as follows:

(A) [no provision]; (B) provides that there shall be excluded gains and losses from sales or exchanges of capital assets held for more than 6 months; (C) provides for the exclusion of income derived from the retirement or discharge by the taxpayer of any bond, debenture, note or certificate or other evidence of indebtedness if outstanding for more than 6 months; (D) provides for the disallowance of certain deductions in connection with the retirement or discharge by the taxpayer of any bond, debenture, note, or certificate or other evidence of indebtedness if the obligation of the taxpayer has been outstanding for more than 18 months; (E) provides for the disallowance of casualty, demolition, and similar losses not compensated for by insurance or otherwise; (F) provides for a decrease in the deduction for expenses in connection with repayment of processing tax to vendees; (G) that the credit for dividends received shall apply without limitation to dividends on stock of domestic corporations; (H) provides for the disallowance of deductions attributable to any claim, award, judgment, or decree against the taxpayer, including interest, if abnormal for the taxpayer; or if normal, but in excess of 125 percent of the average of such deductions in the 4 previous taxable years, such deductions shall be disallowed in an amount equal to such excess; (I)

provides for a like disallowance for deductions attributable to intangible drilling or development costs paid or incurred in or for the drilling of wells or the preparation of wells for the production of oil or gas and for development costs in the case of mines.

Subsection (J) of section 711 (b) (1), with which we are here concerned, provides as follows:

(J) Abnormal Deductions.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

Section 711 (b) (1) (K) provides in material part as follows:

(K) Rules for Application of Subparagraphs (H), (I), and (J).—For the purposes of subparagraphs (H), (I), and (J)—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The pertinent section of the regulations is set forth in the margin.[1]

The respondent, applying the provisions of section 711 (b) (1) (J), disallowed part of a bad debt deduction for the petitioner's base period year 1936, thus increasing the excess profits net income for that year. As a result of this action, the difference between the aggregate amount ascertained for the first half of the base period and that for the second half was lessened and the excess profits credit was correspondingly reduced.

The petitioner contends that the respondent may not apply section 711 (b) (1) (J) where such application will result in an increase in tax. It argues that the section is a relief measure, specifically enacted for the relief of taxpayers, and that it may be applied only for that purpose.

---

[1] Sec. 35.711 (b)–2 [Regulations 112] *Abnormal Deductions in Base Period.*—Adjustments in the excess profits net income for a taxable year in the base period are required in order to disallow deductions of a class which is abnormal for the taxpayer, and to disallow the amount by which deductions of a class normal for the taxpayer exceed 125 percent of the average amount of deductions of such class for the four previous taxable years. \* \* \*

The taxpayer must establish that the abnormality or excessiveness of the deduction is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer. \* \* \*

The respondent contends that the average base period net income can not be computed under the "growth formula" provided by section 713 (f) unless and until proper effect has been given to all the adjustments prescribed in section 711 (b) (1). Otherwise, argues the respondent, the petitioner will have all the benefits of section 713 (f) while avoiding any detriment arising from the application of section 711 (b) (1). His contention in effect is that section 711 (b) (1) is "neutral" and must be applied in all cases where the facts so indicate, whether the result is to grant relief or impose a detriment on the taxpayer, "regardless of the taxpayer's wishes in the matter."

We have held that section 711 (b) (1) (J) was intended to be and is a remedial statute and that it should be given a reasonable and rational construction in order that it may give the relief it was intended to provide. *Green Bay Lumber Co.*, 3 T. C. 824. Here, however, if the respondent's view were adopted, we should have the paradoxical situation of a relief section applied in a way which would not merely provide no relief for the taxpayer, but would impose a positive detriment upon him. Such a construction would violate the well established rule that relief provisions are to be liberally construed in favor of the taxpayer in order to grant the relief they were meant to provide. See *Bonwit Teller & Co.* v. *United States*, 283 U. S. 258; *Helvering* v. *Bliss*, 293 U. S. 144.

The respondent's contention furthermore overlooks the precise language of section 711 (b) (1). That section sets forth several adjustments which must be made in computing excess profits net income for the base period years. The adjustments provided for in subsections (A) through (G) are mandatory and must be made in every case where applicable. The adjustments in subsections (H), (I), and (J), however, are specifically limited in their application by the provisions of subsection (K). That subsection is entitled "Rules for Application of Subparagraphs (H), (I), and (J)" and provides in part: "Deductions shall not be disallowed under such subparagraphs unless the *taxpayer* establishes that the abnormality or excess is not a consequence of" [italics supplied] the causes therein specified. Consequently, we are unable to see how, under the plain wording of the statute, subsection (J) may be applied in a case where the taxpayer fails to make the showing required by (K) (ii).

The respondent contends, however, that this language is not meant to supply the sole test for the application of subsection (J), but is intended merely to cover those situations where the taxpayer seeks to apply the section. He argues that no such burden is placed upon the Commissioner; that his determination is presumptively correct and if the taxpayer desires to overcome such presumption it must come forward with the proper proof.

The respondent's contention finds no support in the sections involved. He would have us hold that in order to "avoid" the application of subsection (J) the taxpayer must make an affirmative showing. But such a showing could not be of the type required by (K) (ii), for that is the proof necessary in order to apply the provisions of (J). It would then necessarily be a proof of facts directly in opposition to those required by (K) (ii). It is almost superfluous to say that there is nothing in the statute permitting such a method of procedure. For us so to hold would be an act of judicial legislation. Subsection (K) is specific and unequivocal in its provision that deductions shall not be disallowed under (J) unless the *taxpayer* makes the proof required therein. As was said in *William Leveen Corporation*, 3 T. C. 593:

> * * * the abnormal portion [of the deduction] may be eliminated from the deduction ("disallowed"), * * * only if, as required by subsection 711 (b) (1) (K) (ii), the taxpayer "establishes that the abnormality or excess is not a consequence of an increase in the gross income" for the base period. * * *

Consequently, we are led inescapably to the conclusion that where the taxpayer fails to make such proof, either because of inability to do so or because it is not to his advantage to do so, the subsection is not to be applied. The definite character of the language used indicates clearly, we think, that section 711 (b) (1) (J) was intended as a relief measure for the benefit of taxpayers, and that it was not intended to be used in such a manner as to impose a burden upon them.

Further support for this view is found in the committee reports. Sections 711 (b) (1) (H), (I), (J), and (K) were enacted as a part of the Excess Profits Tax Amendments of 1941. In its report [2] the House Ways and Means Committee explained the need for the legislation in the following language:

> * * * the present legislation attempts to provide, both by specific terms and in carefully guarded general terms, a set of flexible rules which should alleviate at least the bulk of the severe hardship cases which may arise. The success or failure of legislation of this type depends, to a considerable degree, upon its intelligent and sympathetic administration. * * *
>
> The bill affords relief in the following situations.
> * * * * *
> 2. It adds to the list of adjustments for specific items of abnormal deductions, set out in section 711 (b) of the existing law, a further adjustment for abnormal deductions of any class during the years in the base period.

The committee report explains section 711 (b) (1) (K) in part as follows:

> * * * This subsection also restricts the benefits of new subsections (H), (I), and (J) by placing upon the taxpayer the burden of establishing that the

---

[2] H. Rept. No. 146, 77th Cong., 1st sess.

abnormalities or excesses in the deductions treated by those subsections are not the consequences of an increased gross income or a decrease in the size of other deductions in the base period or of changes in the type, manner of operation, size, or condition of the business conducted by the taxpayer.

These reports show clearly that Congress intended to afford relief to taxpayers by enactment of the sections here involved. To construe them as the respondent would have us do would, in our opinion, completely thwart the legislative purpose. We think such a construction would violate the letter as well as the spirit of the statute. It may be pointed out that the situation here presented is the converse of that normally met. Generally the taxpayer is urging measures to raise the average base period net income, thereby decreasing its tax. Here the opposite is to its advantage in the taxable year. This fact, however, has no bearing on the question for decision.

In view of our decision on the primary issue, it is unnecessary to consider the other issue raised.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HARRON, *J.*, dissents.

---

OPPER, *J.*, dissenting: The present question can not be evaluated without reference to the true meaning of section 713, under which in fact the petitioner's claim for relief is made. How this section is to be applied appears not only from its own terms but, if there were doubt, even more clearly from the reports of the congressional committees accompanying the Excess Profits Tax Amendments of 1941. The statement is there made that:

Relief is provided for corporations that experienced *rapid growth* during the base period. Under existing law, only the average experience during those years can be counted in determining the excess-profits credit based on income. *Corporations whose facilities and production capacities were substantially increased* during this period would thus be penalized as compared to corporations which had already achieved and maintained a high and constant level of production. The bill will give effect *to the ratio of increase* during these years. This treatment will afford a substantial advantage *to these expanding companies* as compared with the use of the level average now required.[3] [Emphasis added.]

The effect of the Tax Court's opinion in this proceeding is to disregard wholly the purpose of the so-called "growth formula" and to apply it to a situation. or at least to a degree.[4] which results not from any growth of the petitioner's business, but from a purely fortuitous abnormality which happened by accident to occur in the earlier half of the base period. If this petitioner were asking for relief under

---

[3] H. Rept. No. 146, 77th Cong., 1st sess., p. 3 ; S. Rept. No. 75, 77th Cong., 1st sess., p. 3.
[4] Since the statutory formula takes account of the rate of growth as well as of the fact of growth. it can not successfully be contended that petitioner should succeed here in obtaining a more advantageous base period income credit than the statute permits, as distinguished from some other hypothetical taxpayer whose only basis for resort to the growth formula, at all, might be a similar abnormality.

section 711 and claiming the benefit of an adjustment for the abnormality, it would, I agree, be appropriate to treat its claim with due regard to the qualifying conditions of proof which the statute commands under those circumstances.[5]  But, since it is the entirely separate principle of section 713 to which petitioner must resort for the relief it now seeks, I see nothing in the statutory language nor in the legislative purpose to justify disregarding an indisputable abnormality.  To permit the claim here is equivalent to the granting of relief on the curious theory that petitioner has overcome the presumptive correctness of respondent's determination under section 713 by failing to maintain a burden cast upon other taxpayers by a wholly different section.

TURNER, ARUNDELL, and DISNEY, *JJ.*, agree with this dissent.

---

[5] "* * *  This subsection also restricts the *benefits* of new subsections (H), (I), and (J) [of sec. 711] by placing upon the taxpayer the burden of establishing that the abnormalities," etc.  (Emphasis added.)  Op. cit., p. 5.