THE WELCH GRAPE JUICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9571.   Promulgated October 28, 1947.

*Maurice Austin, Esq.*, and *Leo H. Hoffman, Esq.*, for the petitioner. *Harold D. Thomas, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: In its excess profits tax return for the year ended August 31, 1942, petitioner claimed certain adjustments for abnormal deductions under sec. 711 (b) (1) (J) of the Internal Revenue Code applicable to its base period years ended August 31, 1937, 1938, 1939, and 1940. These claimed adjustments were all disallowed by the respondent.

In its amended petition the petitioner alleges that, in computing its base period net income, the respondent erred in failing to allow the following adjustments as increasing excess profits net income for the base period years indicated:

| Adjustment for abnormal deductions under section 711 (b) (1) (J), claimed by petitioner and disallowed by respondent | Base period year | | |
|---|---|---|---|
| | Sept. 1, 1937 to Aug. 31, 1938 | Sept. 1, 1938 to Aug. 31, 1939 | Sept. 1, 1939 to Aug. 31, 1940 |
| Advertising | | | $28,804.17 |
| Trade-marks | $22.52 | $775.14 | |
| Foreign exchange | | | 1,331.15 |
| Flood and fire loss | | 1,817.57 | |
| Loss of funds on deposit due to bank failure | | | 1,646.13 |
| Total | 22.52 | 2,592.71 | 31,781.45 |

Other adjustments claimed in its return are not contested in the amended petition.

The taxpayer in its original petition declared that the disallowance of these adjustments constituted errors by the Commissioner. How-

ever, in its amended petition the taxpayer claimed that only those rejected adjustments which applied to the last two years of the base period, together with one unimportant adjustment in the third base period year, were erroneous. The taxpayer waived all claims of error for the rejection of the other adjustments in the first two years of the base period. Inasmuch as the taxpayer claimed relief under the "growth formula" set forth in section 713 (f) of the Internal Revenue Code, the acceptance of respondent's refusal to make adjustments to the first two years of the taxpayer's base period materially benefited the taxpayer under the "growth formula."

The respondent now argues on brief that where, as here, the petitioner has computed its excess profits tax credit under the so-called "growth formula," sec. 713 (f) of the Internal Revenue Code, it may not invoke the provisions of section 711 (b) (1) (J) unless it shows that the claimed adjustments are all of the adjustments permitted under that section for the entire term of the base period years.

Section 711 (b) (1) (J) is a remedial statute and the taxpayer has the burden of showing that the relief which he claims comes within the purview of that section as limited by subsection (K), but we find nothing in either the statute or the regulations promulgated thereunder which places on him the burden of proving that there are no other deductions in any of the base period years which might be disallowed as abnormal within the meaning of the statute. We find nothing in section 711 (b) (1) (J) to indicate that it is to be applied differently when 713 (f) is applicable. Cf. *Colson Corporation*, 5 T. C. 1035; *Fain Drilling Co.*, 8 T. C. 1174.

It is true that in its return the petitioner claimed certain adjustments for base period years under section 711 (b) (1) (J), but all the claimed adjustments were disallowed by the respondent in determining the deficiency here in question. In its amended petition the petitioner alleges error as to some of the adjustments formerly claimed and disallowed by the respondent, but not as to all. The respondent would now have the petitioner prove that the claimed adjustments which he disallowed and the petitioner thereafter abandoned were (or were not) abnormal within the meaning of section 711 (b) (1) (J). We know of no rule of pleading that would require such proof. Only the adjustments claimed in the amended petition are in issue here. Cf. *Wentworth Manufacturing Co.*, 6 T. C. 1201.

The respondent admits and the parties have stipulated that the petitioner is entitled to claimed adjustments for the base period year ended August 31, 1939, as follows: Flood and fire loss in the amount of $1,817.57; loss from dismantling a plant owned by the petitioner, $3,250, and $3,218.62 which had previously been deducted in computing special class net income for that year.

The remaining issues presented for our decision are whether the respondent erred in disallowing the claimed adjustments under section 711 (b) (1) (J) of the Internal Revenue Code for advertising, expenditures for trade-marks, foreign exchange, and loss of funds due to bank failure. These items constitute classes of deductions for the taxpayer and were so treated by it on its books of account and tax returns.

### Advertising Expense.

The petitioner contends that in computing its excess profits tax net income for the base period year ended August 31, 1940, it is entitled to an adjustment under section 711 (b) (1) (J) (ii) of the Internal Revenue Code for advertising expense in the amount of $28,804.17, as in excess of 125 per cent of the average amount of deductions for such class for the four previous taxable years. It argues that the excess amount spent for advertising in that year was expended to maintain its sales of Welch's Grape Juice during an extraordinary and unusual price war, inaugurated by its competitors, without cutting its prices, and was not the consequence of any of the limitations set out in section 711 (b) (1) (K) (ii) of the code.[1]

The respondent contends that the increase in advertising expense was a consequence of (1) an increase in gross income, or (2) a decrease in other selling expenses, and (3) a change in the condition of the business engaged in by the petitioner, and therefore, the requirement of subsection (K) had not been met.

Subsection 711 (b) (1) (J) (ii) of the code provides:

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

There is no question that the class of deductions here was normal for the taxpayer or that the deductions for such class for the base period year 1940 were in excess of 125 per cent of the average amount of deductions of such class for the four previous taxable years. They therefore come squarely within subsection (J) (ii) and must be disallowed, as contended by the petitioner, unless, as contended by the respondent, the petitioner has failed to meet its burden of proof under subsection (K) (ii). In our opinion it has met this burden of proof.

The record very definitely shows that the excess amount expended

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

\* \* \* \* \* \*

(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.

for advertising in the base period year ended August 31, 1940, was a consequence of the price cutting inaugurated by petitioner's competitors in that year. Petitioner had two courses open to it. It could meet price cutting by price cutting, or stand pat on its prices and meet the extraordinary competition by increasing its advertising. It chose the latter course, and subsequent developments proved that policy justified by the results. It had lost sales in the beginning of the year, but before the end of the year the volume of sales started to come back, and, while it did not sell as many cases of grape juice in 1940 as it had originally estimated, it did sell 822,959 cases in that year as against 838,575 cases in 1939. However, due to the unusual competitive situation under which it operated in 1940, the advertising expense per case reached an all time high of $1.041 per case sold. This increase was not a consequence of an increase in the gross income of the taxpayer. The excess expenditure was to maintain sales while holding the line on prices that had been standardized throughout the years. In fact, during the fiscal year 1940 petitioner's gross income was substantially less than it was during the fiscal year 1939, when the advertising expenses were $0.855 per case of Welch's Grape Juice sold. Increased expenditures for advertising may cause an increase in gross income, but such income need not be a consequence of them. Cf. *R. C. Harvey, Co.*, 5 T. C. 431; *Wentworth Manufacturing Co.*, *supra*.

Nor was the increase in advertising expenditures a consequence of a decrease in the selling expense, as contended by the respondent. There is no evidence in the record that there was any decrease in selling expense over the normal amount spent. The salesmen were largely salaried employees and there is no evidence that the sales force was decreased or that salaries were cut as the result of the additional advertising. Nor do we find any change in the condition of the business engaged in by the petitioner within the meaning of the statute. It is true that there was a change in the general marketing conditions due to causes which we have discussed, but this did not bring about a change in the type, manner of operation, size, or condition of petitioner's business within the meaning of the statute.

We hold that petitioner is entitled to the relief claimed in the amount of $28,804.17 for the base period year ended August 31, 1940, in computing its average base period net income.

### *Trade-marks.*

In the base period years ended August 31; 1938 and 1939, it had had expenditures for trade-mark registration in excess of 125 per cent of the four preceding base period years in the respective amounts of $22.52 and $775.14. This excess was due, particularly in the fiscal year 1939, to an unusual number of registrations on account of original

registrations expiring in that year. The respondent refused to disallow this excess under section 711 (b) (1) (J) (ii) and contends that the "trade-marks" expense is not a class of deductions under the statute and, moreover, that petitioner has failed in its burden of proof under (K) (ii).

The respondent argues that trade-mark expense is largely legal and, while the lawyers employed were not necessarily the same as were employed for other legal work, the amount claimed should be considered a selling expense and grouped accordingly, regardless of how the items may be classified on the petitioner's books.

The treatment of expenditures for "trade-mark" registration and re-registration as a class of expenditures appears reasonable. The petitioner so treated it in its books and in its income tax returns and, while this fact is not conclusive, it is persuasive when considered in the light of the evidence that the expense involved was largely due to re-registration costs. While trade-mark expense was normal to petitioner, this expense may and does become unusually large in years when a large number of trade-marks must be renewed. Since the expense was due largely to renewals, it was not due to any of the limitations set out under subparagraph (K) (ii). We hold, therefore, that the claimed excess for the fiscal years 1938 and 1939 should be disallowed in computing the base period net income for the respective years. Cf. *Wentworth Manufacturing Co., supra.*

In its excess profits tax return the petitioner claimed an adjustment for the fiscal year ended August 31, 1940, in the amount of $1,916.62, due to the drop in value of the Canadian dollar. It appears that this deduction was due originally to petitioner's recording the profits from its Canadian branch on its books in American dollar value and so reporting it in its income tax returns. In our opinion this deduction was taken and allowed to correct an error in the statement of petitioner's gross income from its Canadian branch. It is not a class of deduction— it is not even a deduction falling under section 23 of the Internal Revenue Code. It does not represent any expenditure of money or the incurring of any liability. We hold that the claimed adjustment was properly disallowed by the respondent.

The parties stipulate that the loss of funds on deposit due to the failure of a bank at Lawton, Michigan, in the amount of $1,646.13, for the base period year ended August 31, 1940, is a deduction which was abnormal for the taxpayer within the meaning of section 711 (b) (1) (J) (i) of the Internal Revenue Code.

The respondent contends, however, that the petitioner has failed to prove that this loss of funds on deposit was not a consequence of the limiting factors enumerated in subparagraph (K) (ii).

The evidence is that petitioner had for many years maintained an account at the bank in an amount of approximately $3,000 to meet

pay rolls and local bills at its plant at Lawton. Each week the manager of the local branch would submit to the main office a report of his expenditures from this account and the account in the bank would be correspondingly reimbursed in like amount. Upon failure of the bank, the petitioner sustained a loss in the amount of $1,646.13, which was claimed and allowed on its income tax return for 1940.

We hold that, under the facts, the claimed loss was a consequence of the bank failure and was not a consequence of any of the factors enumerated in subparagraph (K) (ii). Since the parties agree that the deduction was abnormal to petitioner within subsection (J) (i), it should be disallowed in computing petitioner's base period net income for the year ended August 31, 1940.

Reviewed by the Court.

*Decision will be entered under Rule 50.*