Southern Textile Machinery Company v. Commissioner.
Southern Textile Mach. Co. v. Commissioner
Docket No. 12870.
United States Tax Court
1948 Tax Ct. Memo LEXIS 201; 7 T.C.M. (CCH) 245; T.C.M. (RIA) 48071; April 30, 1948
*201 Held: Where a deduction under section 23 (f) for loss arising from casualty was claimed and allowed in a base period year, the disallowance of such deduction, in computing the excess profits net income for such year, is mandatory under section 711 (b) (1) (E) of the Internal Revenue Code. Held, further: Where there was a substantial increase in gross income in the base period year 1939 resulting in a substantial increase in excess profits tax, the excess of 125 per centum of the average amount of such tax for the four preceding years is not disallowable under section 711 (b) (1) (J) of the Internal Revenue Code unless it is established that the excess was not "a consequence of an increase in the gross income of the taxpayer" as provided in subsection (K) (ii). That a higher declaration of capital stock value would have decreased or eliminated excess profits taxes does not establish that the excess in tax was not "a consequence of an increase in gross income of the taxpayer." Ralph H. Schuette, Esq., for the petitioner. John O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in excess profits taxes of $4,573.89 and $2,252.90 for 1943 and 1944. The questions to be determined are whether the Commissioner erred in arriving at the excess profits credit for 1943 and 1944 (1) in allowing an adjustment of $14,864.08 to the base period year 1937 net income as an abnormal deduction under section 711 (b) (1) (E) of the Internal Revenue Code, and (2) in disallowing an adjustment of $7,132.77 to the base period year 1939 as an abnormal deduction under section 711 (b) (1) (J) (ii) of the Internal Revenue Code. Findings of Fact The facts were all stipulated and as stipulated are as follows: The Southern Textile Machinery Company, hereinafter referred to as the petitioner, is a Kentucky *203 corporation, located in Paducah, Kentucky. Petitioner filed its corporation income and declared value excess profits tax returns and its excess profits tax returns for the taxable years 1943 and 1944 with the collector of internal revenue for the District of Kentucky. The excess profits credit taken by the petitioner on these returns was based on income and was computed on Schedule B of said returns, as follows: Schedule B. - Excess Profits Credit - Based on Income
Taxable Years Beginning After Dec. 31, 1935, and Before January 1, 1940
(If additional columns are required, attach separate schedule)
1. Year Ended
2. Year Ended
3. Year Ended
4. Year Ended
Dec. 31, 1936
Dec. 31, 1937
Dec. 31, 1938
Dec. 31, 1939
1 Normal-tax (or special-class) net in-
come
$55,068.52
$45,678.31
$58,292.82
$114,247.68
18. Normal-tax (or special-class) net in-
come after applying section 711
(b) (2) (line 14 minus line 17)
$55,068.52
$45,678.31
$58,292.82
$114,247.68
20. Dividends received credit
1,115.63
506.81
24. (c) Other abnormal deductions
14,864.08
7,132.77
26. Total of lines 18 to 25
$56,184.15
$61,049.20
$58,292.82
$121,380.45
28. Dividends received from domestic
corporations
$ 1,312.50
$ 596.25
$ 570.00
$ 915.00
30. Total of lines 27 to 29
$ 1,312.50
$ 596.25
$ 570.00
$ 915.00
31. Excess profits net income (line 26
minus line 30)
54,871.65
60,452.95
57,722.82
120,465.45
32. Net aggregate of columns 1, 2, 3,
and 4
293,512.87
(Fill in lines 36 to 42 for computation of average base period net income where there are in-
creased earnings in last half of base period)
36. Net aggregate of columns 3 and 4, line 31 (see instruction regard-
ing limitation applicable to taxable year ending after May 31, 1940
$178,188.27
37. Net aggregate of columns 1 and 2, line 31
115,324.60
38. Excess of line 36 over line 37
$ 62,863.67
39. One-half of line 38
31,431.84
40. Line 36 plus line 39
$209,620.11
41. Line 40 divided by number of months in second half of base
period, multiplied by 12
104,810.06
42. Average base period net income - Increased earnings in last half of base
period (line 41, or the highest excess profits net income for any taxable year
in the base period, whichever is lesser)
$104,810.06
43. 95 per cent of line 35 or line 42, whichever is greater
$ 99,569.56
46. Excess profits credit-based on income (line 43 plus line 45, if a net capital
addition) (or line 43 minus line 45 if a net capital reduction)
$ 99,569.56
*204 The amount of $14,864.08 referred to in Schedule B of the petitioner's 1943 and 1944 corporation excess profits tax returns as an abnormal deduction represents a casualty loss from flood deducted by petitioner on its 1937 income and excess profits tax return under authority of section 23 (f) of the Revenue Act of 1936. This deduction was allowed by respondent. The amount of $7,132.77, referred to in Schedule B of the petitioner's 1943 and 1944 corporation income and declared value excess profits tax returns as an abnormal deduction was described in said returns as the portion of petitioner's 1939 excess profits tax liability which was in excess of 125 per cent of the average of such deduction for the four preceding years. The petitioner's sales, gross income, excess profits net income, declared value of capital stock and excess profits tax paid for the taxable years 1935 through 1939, are as follows: Declared Value
Excess
Gross
Excess Profits
of Capital
Profits
Year
Sales
Income
Net Income
Stock
Tax Paid
1935
$155,359.57
$ 88,352.38
$ 50,667.58
$314,039.73
$ 662.02
1936
208,283.62
96,820.35
56,611.96
350,000.00
1,452.51
1937
256,228.11
92,693.95
46,167.60
380,127.63
502.12
1938
281,250.68
111,656.29
59,299.23
375,000.00
1,490.91
1939
420,063.45
184,860.16
121,881.56
414,276.88
8,411.63
*205 As a result of an audit of the petitioner's 1943 and 1944 income and declared value excess profits tax returns, the internal revenue agent in charge at Louisville, Kentucky, notified the petitioner by a 30-day letter, mailed February 20, 1946, that the amount of $7,132.77 claimed by it to be an abnormal deduction, was disallowed as petitioner had not "established that the abnormality or excessiveness of the deduction is not a consequence of an increase in the gross income of the taxpayer in its base period * * *." On March 27, 1946, the petitioner mailed to the internal revenue agent in charge at Louisville, Kentucky, a formal protest to the adjustment contained in the 30-day letter and stated that: "At or before the time the 1939 capital stock tax return was filed it was known that the company had made total sales of $250,510.65 for the seven months ended July 31, 1939 compared with $145,368.08 for the corresponding seven months of 1938 while the indicated profits for the respective periods were $88,893.22 and $24,482.36. "A person familiar with the Federal tax laws and having the above information available would have declared the stock at $1,500,000 or $1,750,000 and paid *206 a capital stock tax of $1,500.00 or $1,750.00 instead of the $414.00 paid. However, with either of the above declarations no excess profits tax would have been paid. "The $8,411.63 was not paid because of the increase in sales volume but by reason of a mistake of law and a lack of knowledge by taxpayer of its rights and privileges. It is therefore contended that the payment of $8,411.63 excess profits tax was abnormal." The petitioner's monthly profits and loss statements disclosed the following: 1938
1939
Month
Sales
Profit
Sales
Profit
January
$ 20,066.53
$ 6,596.14
$ 34,290.81
$ 17,669.98
February
19,768.97
6,278.04
29,702.90
11,838.11
March
24,159.10
7,978.03
40,162.20
12,661.21
April
21,212.25
1,337.10
34,912.74
7,027.33
May
14,773.01
(4,130.78)
36,175.97
13,780.94
June
21,490.50
1,376.61
40,192.43
13,372.69
July
23,897.72
5,047.22
35,073.60
12,542.96
August
29,031.50
10,164.52
42,943.08
13,854.36
September
31,392.75
8,847.87
36,794.14
7,739.00
October
36,417.79
11,724.00
41,426.88
7,948.14
November
32,646.16
9,982.20
42,207.30
13,850.68
December
26,883.52
(12,097.66)
31,642.83
(23,560.56)
Totals
$301,739.80
$53,103.29
$445,524.88
$108,724.84
*207 The petitioner filed its capital stock tax return for the year ended June 30, 1939, on August 31, 1939. On May 23, 1946, the petitioner, at a conference held with the internal revenue agents to determine the merits of the protest filed, for the first time advanced the contention that the amount of $14,864.08 which it had classified as an abnormal deduction in arriving at its excess profits credit, for the taxable years 1943 and 1944, should be allowed as a deduction in arriving at said excess profits credit. In support of this contention, petitioner stated that the provisions of section 711 (b) (1) (E) are not mandatory and that said section is a relief provision which may not be imposed to its detriment. On December 10, 1946, respondent mailed petitioner a notice of deficiency which stated that determination of the respondent to be that the excess deduction for declared value excess profits tax for 1939 in the amount of $7,132.17, under section 711 (b) (1) (J) (ii) of the Internal Revenue Code was a consequence of an increase in the gross income of the taxpayer within the meaning of section 711 (b) (1) (K) (ii) of the Code, and that no part of such excess *208 deduction may be disallowed in the computation of the average base period income for the purpose of the excess profits credit. This is the only adjustment producing the asserted deficiency which petitioner has contested. In addition, the notice of deficiency determined that the petitioner had correctly treated the 1937 flood loss of $14,864.08 in the computation of the base period income for the purpose of the excess profits credit on its 1943 and 1944 excess profits tax returns as the disallowance of said loss under section 711 (b) (1) (E) of the Internal Revenue Code for the purpose of the excess profits credit is mandatory. The petitioner paid declared value excess profits tax of $788.85 for the taxable year 1943 and paid no declared value excess profits tax for 1944. Opinion VAN FOSSAN, Judge: The petitioner, in computing its excess profits credit for 1943 and 1944, made an adjustment to normal net income for 1937 by adding thereto as an abnormal deduction the amount of $14,864.08 representing a casualty loss from flood deducted by it on its 1937 income and excess profits tax return under section 23 (f) of the Revenue Act of 1936. The Commissioner allowed *209 the adjustment. The petitioner assigned such allowance as error, claiming that the adjustment was not mandatory under section 711 (b) (1) (E) of the Internal Revenue Code and that such section was a relief provision which should be liberally construed to petitioner's advantage. However, on brief, petitioner concedes that the adjustment is mandatory under the statute and that it was so held in Colson Corporation, 5 T.C. 1035. The action of the Commissioner in allowing the adjustment is approved. In computing its excess profits credit based on income, the petitioner adjusted its special-class net income for 1939 by adding thereto as an abnormal deduction under section 711 (b) (1) (J) (ii) of the Internal Revenue Code the amount of $7,132.77, which it claimed was the portion of its 1939 excess profits taxes in excess of 125 per centum of the average of its excess profits taxes for the four preceding years. It is conceded by petitioner that the portion of its 1939 excess profits taxes ($8,411.63) in excess of 125 per centum of the average of its excess profits taxes for the four preceding years is $7,128.02. The Commissioner, *210 in computing petitioner's excess profits credit, disallowed the adjustment. He held that "the excess deduction for declared value excess-profits tax for 1939 in the amount of $7,132.17, under Section 711 (b) (1) (J) (ii) of the Internal Revenue Code was 'a consequence of an increase in the gross income of the taxpayer' within the meaning of Section 711 (b) (1) (K) (ii) of the Code, and that no part of such excess deduction may be disallowed in the computation of the average base period income for the purpose of the excess profits credit." The respondent does not deny that the deduction sought was of a class which was normal for the petitioner nor that the amount of $7,128.02 is the portion of the taxes in excess of 125 per centum of the average of the taxes for the four preceding years. Section 711 (b) (1) (K) (ii) provides as follows: "(K) Rules for Application of Subparagraphs (H), (I), and (J). - For the purposes of subparagraphs (H), (I), and (J) - * * *
"(ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excess is not a consequence of an increase in the gross income of the *211 taxpayer in its base period * * *." In Colson Corporation, supra, it is stated, in reference to section 711 (b) (1), as follows: "The adjustments provided for in subsections (A) through (G) are mandatory and must be made in every case where applicable. The adjustments in subsections (H), (I), and (J), however, are specifically limited in their application by the provisions of subsection (K). * * *
"Consequently, we are led inescapably to the conclusion that where the taxpayer fails to make such proof [as required by subsection (K)], either because of inability to do so or because it is not to his advantage to do so, the subsection [J] is not to be applied." The petitioner contends that the increase in excess profits taxes in 1939 was not due to an increase in gross income but to a mistake in judgment of petitioner's officers due to their ignorance of the advantage taxwise in declaring the value of its capital at ten times the anticipated earnings. Had a value been declared in each year that properly reflected the true value of petitioner's stock, i.e., ten times anticipated earnings, it is argued, a higher base period net income would have resulted than *212 petitioner now seeks by the contended-for adjustment, the higher gross income notwithstanding. It is conceded by respondent that had a sufficiently high value been placed upon petitioner's capital stock in 1939, the excess profits tax for that year could have been held to an approximate average of the four preceding years or even less. He argues, this not having been done, however, there remained the precise situation which, under the statute, is a complete bar to the disallowance of a deduction under subsection (K). There was an increase in gross income in 1939 of $73,203.87 as compared with 1938. The increase in 1939 gross income over the average of the four preceding years was greater, or $87,479.42. The excess profits net income in 1939 was $121,881.56, whereas such income in 1938 was only $59,299.23. The result was an excess profits tax in 1939 of $8,411.63, whereas in 1938 the tax was only $1,490.91. Upon the facts presented the increase in excess profits taxes for 1939 obviously was the "consequence of an increase in the gross income of the taxpayer" for 1939. It has been recognized that a low or high declaration of the value of capital stock by a taxpayer will have its *213 effect on the amount of both the capital stock tax and the excess profits tax. But this is as Congress intended. Haggar Co. v. Helvering, 308 U.S. 389; Helvering v. Lerner Stores Corporation, (Md.), 314 U.S. 463. In the latter case it is stated as follows: "* * * the capital stock tax and the excess profits tax are closely interrelated. The declared value of the capital stock is the basis of computation of both taxes. * * * The taxpayer is free to declare any value of the capital stock for the first year which it may choose. While a low declaration of value decreases the amount of the capital stock tax, it increases the risk of a high excess profits tax. On the other hand, a high declaration of value while decreasing the tax on excess profits, increases the capital stock tax. * * * "* * * Congress has prescribed the method by which the taxes are to be computed. The taxpayer here is given a choice as to value. While the decision which it makes has a pronounced effect upon its tax liability, that is not uncommon in the tax field. Congress has fixed the criteria in light of which the choice is to be made. The election which the taxpayer makes cannot affect *214 anyone but itself." The petitioner made its choice and subsection (J) cannot be availed of to correct the claimed error in judgment of its officers. Moreover, once a capital stock tax return has been filed and the time within which such return was required to be filed has expired, a capital stock valuation cannot be amended, even though the declaration of a lower amount than intended was due to a clerical error. Helvering v. Lerner Stores Corporation (Md.), supra; Scaife Co. v. Commissioner, 314 U.S. 459. Petitioner, in effect, is seeking indirectly to correct or to be relieved of the consequence brought about by its alleged mistake in judgment. This it is not permitted to do directly, i.e., by the amendment of its declarations during the base period years. Nor may it do so by indirection. It is our conclusion that the Commissioner did not err in denying the disallowance of the excess profits taxes for 1939 as claimed. Decision will be entered for the respondent.