GUY C. MYERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 914, 3216.   Promulgated April 28, 1949.

*George R. Sherriff, Esq.*, and *George V. Mahoney, Esq.*, for the petitioner.

*Robert C. Whitley, Esq.*, and *Edwin L. Kahn, Esq.*, for the respondent.

### SUPPLEMENTAL OPINION.

HARLAN, *Judge*: The original opinion in these proceedings was promulgated September 28, 1948, at 11 T. C. 447.   Subsequently the petitioner and the respondent filed conflicting computations under Rule 50, and, following a hearing on December 21, 1948, each party filed a memorandum in support of his computation.   The variance in tax liability shown in the computation for 1940 results from disagreement as to an alleged loss in connection with the Grays Harbor transaction.   The difference in the 1941 computations results from an issue in the case which was not theretofore apparent, viz., whether a taxpayer who has received more than one payment in 1941 which comes under section 107 of the Internal Revenue Code may take advantage of that section for the one which works to his tax advantage and ignore it as to the others.

Petitioner's first contention is that he is entitled to reduce gross income for 1940 by an item representing loss on waterworks purchased in connection with the Grays Harbor transaction in the amount of $4,003.60.

Petitioner testified at the hearing that in order to procure the closing of the Grays Harbor transaction he was compelled to purchase a waterworks plant at $4,003.60 above the fair market value.   He gave no testimony as to what disposition, if any, he had ever made of that plant or whether he had ever suffered a capital loss from the sale

thereof. Moreover, he raised no issue pertaining to this alleged loss in his petition. This Court, however, in its findings of fact made the following statement:

* * * In completing the Grays Harbor deal it was necessary for Myers to purchase personally from his own funds a waterworks plant at a cost of $16,003.60, the fair market value of which was $12,000, occasioning him a loss of $4,003.60, which he deducted from his compensation of $71,050 paid him by the Grays Harbor PUD.

Inasmuch as this Court held that income from the Grays Harbor transaction was not taxable under the provisions of section 107, and since that question was, under the pleadings, the only question presented for decision, the above statement in the findings of fact was completely *obiter* as to any issue before the Court and it furnishes no basis for any reduction in gross income in the computation of the deficiency under Rule 50.

We hold that the petitioner is not entitled to a reduction in income in the amount of $4,003.60, and, in accordance with the stipulation of the parties, find the correct deficiency for the year 1940 to be $36,916.68.

Petitioner's second contention is that, although the original opinion herein sustained petitioner's contention that he was entitled to the benefit of the provisions of section 107 of the code on five specific items of his 1941 income, he is now permitted to reject the use of section 107 as to four of those five items and apply the total income involved in those four items to his 1941 income and tax only the fifth item as authorized under section 107.

In his petition, petitioner alleged as error the failure of respondent to permit petitioner to compute his income tax for the years 1940 and 1941 in accordance with the provisions and limitations of section 107 of the code. Involved in the income for 1940 were nine items of income for which the petitioner was claiming section 107 relief, and in his 1941 income there were five items of income for which the petitioner claimed relief under section 107. This Court granted said relief to the petitioner as to five of the items in 1940 and denied relief as to the remaining items. The Court granted section 107 relief to five of the items in the 1941 income. The operation of section 107 on the 1940 issue is not before the Court at this time. This section, as applicable to the taxable year 1941, provides as follows:

(a) PERSONAL SERVICES.—If at least 75 per centum of the total compensation for personal services covering a period of sixty calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

In an amended petition filed prior to the hearing the petitioner, in addition to the relief prayed for in his original petition, asked that an operating loss which he had sustained in 1943 be carried back to offset part of his 1941 income for tax purposes. The respondent contested his right to this operating loss carry-back and continued to oppose it until the trial of the case was well advanced, when the Commissioner conceded the right of the petitioner to carry back his 1943 operating loss. The case continued for the decision of the Court on the other tax questions involved, including petitioner's claimed privilege of the benefit of section 107. After the Court's determination that the petitioner was entitled to this benefit as to five items of his 1941 income, each party filed a computation for entry of decision under Rule 50. The computation of the respondent disclosed that, by treating all of the commissions received in 1941 as income taxable in that year, petitioner's tax liability would be $214,088.27. It also disclosed that, by spreading the commissions ratably over the years in which they were earned, the aggregate of the taxes attributable to the commissions would be $216,391.79. Inasmuch as this latter amount was in excess of $214,088.27, the respondent's computation showed petitioner's tax liability to be $214,088.27, which, after deducting the amount of $41,151.26 previously assessed, left a deficiency of $172,937.01.

The petitioner agrees with the respondent that, if all of the commissions received from the five projects were treated as income taxable in 1941, his tax liability would be $214,088.27. He differs from the respondent, however, in his method of applying section 107. Whereas the respondent spread all five commissions ratably over the years in which the services were rendered, the petitioner included four of these commissions in his income for 1941, and spread only one commission of $321,268.29, from what is known as the Iowa-Nebraska project, over the years in which it was earned. The reason he adopted this procedure is that he had deductions, including a 1943 farm loss carry-back of $61,432.58, which were sufficient to absorb practically all of his 1941 income, with the exception of the Iowa-Nebraska commission. By treating four of the commissions as 1941 income and allocating the Iowa-Nebraska commission to the years in which it was earned, his computation shows a tax liability for 1941 of $124,727.84, and a deficiency for that year, after deducting the amount of $41,151.26 previously assessed, of $83,576.58.

The question raised by the petitioner's computation is this: Where a taxpayer appeals to this Court on the ground that he has been erroneously denied the right to compute his tax liability on certain commissions received in accordance with the provisions of section 107,

and then proves that he received in 1941 five commissions on five separate and distinct projects representing in each instance services rendered over a period of sixty calendar months or more, is he, in computing his tax liability under the alternate methods provided for in section 107, required to spread all of the pleaded and proved long term commissions received in 1941 ratably over the years in which they were earned?

We think that an analysis of section 107 and its purpose requires that this question be answered in the negative. This section was enacted to remove the hardship resulting from bunching long term compensation in one year. Senate Finance Committee Report, Revenue Bill of 1939, S. Rept. No. 648; 1939-2 C. B. 524, 528, 529; Revenue Bill of 1942, S. Rept. No. 1631; 1942-2 C. B. 504, 586, 587. The statute removes this hardship by permitting a taxpayer who receives long term compensation in one year to be treated the same as a taxpayer who receives compensation in the years in which the services are rendered and reports it as income in those years.

However, there is nothing in the statute which would compel the taxpayer to compute every item of his income under the provisions of section 107 when, as here, such computation would result in a greater tax than would be due if some of those items of income subject to section 107 relief were not so treated. The only directive contained in section 107 concerning the tax is that, after the taxpayer has, by proof, brought himself within its provisions:

\* \* \* *The tax* attributable to any part thereof which is included in the gross income of any individual *shall not be greater than the aggregate of the taxes* attributable to such part *had it been included in the gross income* of such individual *ratably over that part of the period which precedes the date of such receipt or accrual.* [Italics supplied.]

In the case at bar, after the trial judge had determined just which portions of petitioner's 1941 income were subject to 107 relief and after the Commissioner had agreed that an operating loss carry-back for 1943 could be applied to petitioner's 1941 income, it developed that, if petitioner treated all portions of his 1941 income subject to section 107 as provided for in that section, he would owe a greater tax than if only one portion of his 1941 income were treated as authorized by section 107.

We find nothing either in the statutes or in the decision herein which compels petitioner to avail himself of section 107 as to any or all of his available income, and the fact that his right to do so has been established by judicial determination has not turned that right into an obligation.

The petitioner in this case has used the only method available to him to get the maximum benefit to which he is entitled under the provisions

of section 107. As long as the question of the loss carry-back was litigated, the petitioner had no right to assume that he would be entitled to such a deduction from his 1941 income and, therefore, he was quite right in pressing all of his various claims for section 107 relief. After the Commissioner at the trial had conceded his right to a loss carry-back, the petitioner was still in a position where he could not select which of the items of section 107 income he could bring under that section and which items his interest required to be taxed in full in 1941, because until the decision herein petitioner had no way of knowing as to which items the Court would accord him section 107 relief. Had petitioner, during the trial, waived his right to section 107 relief on any of the particular items, he might well have guessed wrong and reserved to himself an item which subsequently the Court would refuse to recognize as being subject to 107 relief. The petitioner has, in our opinion, taken the only course that was open to him by delaying his election until after the Court's opinion herein, when he is at last in a position to know the full extent of his rights growing out of the trial.

This case is clearly distinguishable, therefore, from *George J. Meyers Malt & Grain Corporation*, 11 T. C. 383, relied upon by the Commissioner. In that case the taxpayer was seeking to obtain the benefit of the growth formula with respect to his excess profits tax base period income. The taxpayer sought disallowances of certain abnormal deductions during the years 1938 and 1940. The Commissioner had refused to disallow these deductions and the taxpayer in his petition alleged error in refusing to disallow the 1940 deductions, but said nothing about the 1938 deductions. The Commissioner, by answer, sought the disallowance of all abnormal deductions for both 1938 and 1940 if the 1940 deductions were disallowed. At the hearing the taxpayer introduced evidence to establish his right to the disallowance of the 1940 abnormal deductions, but the same evidence also established its right to the disallowance of the 1938 abnormal deductions. In deciding that the abnormal deductions for both years, under the circumstances, must be disallowed, the Court relied upon the provisions of section 711 (b) (1) and (b) (1) (K) (ii) which provide that when the "taxpayer establishes" its right to the disallowance of abnormal deductions the "adjustments *shall* be made." Since all of the provisions of the statute had been fulfilled by the taxpayer, the Court held that the disallowance of all abnormal deductions was a statutory mandate. It is at once obvious that neither the Court nor the petitioner is under such a statutory mandate herein.

We have held that where a remedial statute does not impose an obligation upon the taxpayer, the privilege of accepting the benefits of

the statute rests wholly upon the taxpayer. *Welch Grape Juice Co.*, 9 T. C. 786. Therefore, we conclude that petitioner's 1941 income should be taxed as set forth in petitioner's computation.

Reviewed by the Court.

> *Decision will be entered in accordance with the conclusions reached in this supplemental opinion.*

MURDOCK, *J.*, concurring: If I thought this was a proceeding under Rule 50, I would agree with Judge Black, but it is not, as the opinion points out. It is a supplemental opinion, deciding an inherent issue. It will require new computations under Rule 50.

————

HILL, *J.*, dissents.

BLACK, *J.*, dissenting: I dissent from the majority in the supplemental opinion in rejecting the Commissioner's computation under Rule 50 of petitioner's deficiency for the year 1941 and adopting the computation which has been submitted by petitioner. I think the computation which has been submitted by the Commissioner follows our findings of fact and opinion embodied in our report promulgated September 28, 1948, 11 T. C. 447. I think the computation which has been submitted by petitioner does not follow our findings of fact and opinion, but departs from them in a very important particular that is not permissible under Rule 50.

It was held in *Guy C. Myers*, *supra*, under issues which had been submitted to us by the pleadings, that petitioner had rendered personal services for sixty months or more on five contracts, which I shall designate as A, B, C, D, and E, and in 1941 received 75 per cent or more of his compensation which was to come from them. These are the conditions making operative section 107, which provides that "the tax attributable to any part" of such compensation in 1941 "shall not be greater than the aggregate of the taxes attributable to such part if it had been included in the gross income" ratably over the years of performance. Under Rule 50 respondent computed that petitioner would have paid $216,391.79 in taxes over the performance years if the ratable parts of compensation on all five contracts had been added to the incomes reported for those years. Petitioner computed that he would have paid $124,727.84 in taxes over the performance years if the ratable parts of the compensation on just *one* of the contracts had been added to the incomes reported for those years. Both agreed that the normally computed 1941 tax on *all* income received in 1941 was $214,088.27. *All* income, of course, included the compensation on the five contracts and any other income besides.

Petitioner now contends that in a computation under Rule 50, notwithstanding that he raised in his pleadings the section 107 issue as to his compensation received from all five of these contracts and was sustained by us as to all five, he now has the right under a Rule 50 computation to constitute himself as a sort of a "plucking board" and pluck out only one of the contracts and spread the income from it over the prior years and use the income from the other four contracts in the normal manner.

Rule 50 of the Rules of Practice of this Court provides in substance that computations shall be submitted by the parties "pursuant to the Court's determination of the issues." It further provides that:

Any argument under this Rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This Rule is not to be regarded as affording an opportunity for rehearing or reconsideration.

In stating that I disagree with the majority opinion in what is being done here in a computation under Rule 50, I do not wish to be understood as contending that the petitioner could not in the first instance ask that his compensation from only one of the contracts should be treated under section 107 and that all other compensation should be treated in the normal manner, even though section 107 could be invoked as to some of the rest of it, for example, his compensation from the four contracts which he now seeks to abandon. I think a taxpayer could do that and no one would have any right to complain. In other words, a taxpayer does not have to ask for section 107 relief unless he chooses to do so. But, having assigned error as to the compensation received from all the five contracts and having had his errors sustained in an opinion by our Court, it is my view that petitioner may not under Rule 50 put upon our Court the task of figuring out what sort of a combination of section 107 income taken in connection with his other income and deductions will yield him the lower tax.

It seems to me that, if petitioner has now discovered that his former assignments of error that the compensation from all five of these contracts should be computed according to the provisions of section 107 was ill advised and that he now wishes to amend his pleadings so as to claim the provisions of section 107 only as to the Iowa-Nebraska commission, he would have to ask for a rehearing so as to amend his pleading and reframe the issues. It would be within the sound discretion of this Court to determine as to whether such a rehearing should be granted. But I do not think it is permissible to reach that

result in a computation under Rule 50. It seems to me that to do so is a violation of our own Rules of Practice.

DISNEY, *J.*, agrees with this dissent.

———

JOHNSON, *J*, dissenting: I am unable to agree with the majority's disposition of the second issue. After this Court had decided (11 T. C. 447) that petitioner received in 1941 over 75 per cent of five compensations for services rendered over a period of sixty months or more under five contracts, the Commissioner computed a 1941 tax by including in income the compensations on all five contracts. He then computed the additional amounts of tax which petitioner would have paid if these five compensation payments had been ratably spread over the years of performance. As the normally computed tax was not greater than the aggregate increases in tax which would have resulted if the compensations had been spread, he proposed the normally computed figure, or $214,088.27, as the proper amount of tax conformant with section 107. Accepting the $214,088.27 as the proper tax normally computed, petitioner computed the additional amounts of tax which he would have paid if only *one* of the five compensation payments had been ratably spread over the years of performance. The additional amount was $124,727.84, or less than the normally computed tax on income comprising all *five* compensations. Invoking section 107, he would use this lesser figure as his total tax liability for 1941, and the majority agrees.

In my opinion there is no warrant whatever in the section for comparing the normally computed tax on *five* compensations with the aggregate tax on *one* compensation ratably spread. Section 107 provides that "the tax attributable to any part" of compensation for services rendered over sixty months "shall not be greater than the aggregate of the taxes *attributable to such part*," had it been ratably included in income over the years of performance. The whole tax for 1941, or $214,088.27, is not "the tax attributable to" compensation on *one* contract. It is attributable to compensation on *five*, and to any other income which petitioner received in 1941. It is not, therefore, proper to compare the $124,727.84 with $214,088.27, but only with such fraction of the latter figure as represents the part of normally computed tax "attributable to" the *one* compensation. As no significance has been given to the quoted words of the section in the proposed computations under Rule 50, they form no correct basis for an entry of judgment.